United States District Court
Southern District of Texas
FILED

JAN 1 1 2016

. Clerk of Court

United States District Court
Southern District of Texas

**ENTERED**

January 12, 2016

David J. Bradley, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| AMELIA GARCIA | § | |
| Plaintiff | § | |
| | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. M-15-036 |
| | § | |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION | § | |
| Defendant | § | |

## REPORT & RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) on January 26, 2015.   (Dkt. Entry No. 1.)   The case was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b).   Pending before the Court are the parties' motions for summary judgment and briefing in support.   (Dkt. Entry Nos. 5–7.)   This case is ripe for disposition on the record.

Based on a thorough review of the pleadings, record, and relevant law, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment (Dkt. Entry No. 6) be **DENIED**, Defendant's Motion for Summary Judgment (Dkt. Entry No. 5) be **GRANTED** to the extent it is consistent with the findings and conclusions in this Report, the Commissioner's final decision to deny benefits be **AFFIRMED**, and the case be closed.

### I.   BACKGROUND

Plaintiff filed for disability insurance and supplemental security income benefits in February 2012.   (Dkt. Entry No. 7 at 1.)   Plaintiff's application was denied initially and upon reconsideration.   (*Id.*)   An administrative Law Judge ("ALJ") issued an unfavorable opinion

1

denying benefits in August 2013, and the Appeals Council denied Plaintiff's request for review in late September 2014.  (*Id.* at 1; 3.)

Plaintiff's claim for benefits was premised on a host of impairments and symptoms, including depression, Diabetes Mellitus, Guillain-Barre Syndrome ("GBS") with bilateral knee weakness, anthralgia of the left knee, hypertension, polyneuropathy, blurred vision, an inability to control her bladder and bowel movements, syncope, hematochezia, high cholesterol, and abdominal pain.  (*Id.* at 1; R. 22–23.)  Plaintiff states that "[f]or the entirety of the adjudicated period, Ms. Garcia was an 'individual closely approaching advanced age' (age 50–54), with a GED and past relevant work as a home health provider and van (transportation) driver."  (Dkt Entry No. 7 at 1.)

## II.  STANDARD OF REVIEW

So long as the courts provide each party the opportunity to present his contentions in support of his claim and enter judgment only on the basis of the pleadings and transcript of the record, summary judgment is an acceptable device in cases seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) of the Act.  *Flores v. Heckler*, 755 F.2d 401, 403 (5th Cir. 1985);  *Lovett v. Schweiker*, 667 F.2d 1, 2 (5th Cir. 1981).  However, this Court's review of the Commissioner's final decision to deny benefits under the Act, per 42 U.S.C. § 405(g), is limited to two inquiries: (1) whether the proper legal standards were used in evaluating the evidence; and (2) whether there is substantial evidence in the record as a whole to support the decision that the claimant is not disabled as defined by the Act.  *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

Under the second permissible inquiry, substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion.  *Leggett v.*

2

*Chater*, 67 F.3d 558, 564 (5th Cir. 1995).   It is more than a scintilla, but less than a preponderance.   *Id.*   If the findings of the Commissioner are supported by substantial evidence in the record as a whole, the findings are conclusive and must be affirmed.   *Brown*, 192 F.3d at 496.   Under this standard of review, this Court must carefully scrutinize the record to determine if such evidence is present.   *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988) (per curiam). However, evidentiary conflicts are for the Commissioner, not the courts, to resolve, and courts "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute our own judgment for that of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision."   *Brown*, 192 F.3d at 496 (alteration in original) (quoting *Johnson*, 864 F.2d at 343).   This Court's judicial review is deferential to the Commissioner's decision, but without being so obsequious that it renders the review meaningless.   *Id.*

Although the reviewing court does not reweigh the evidence nor try the issues de novo, the court *does* analyze the evidence to determine whether substantial evidence exists, *e.g.*, *Leggett*, 67 F.3d at 564 (explaining that substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion), and to determine whether errors are harmful or prejudicial, *see, e.g., Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988) ("[P]rocedural improprieties . . .will therefore constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision.");   *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984) (explaining that, where an ALJ fails to fairly develop the record and facts, the claimant must show prejudice to justify a remand, which requires a showing the ALJ could and would have adduced evidence that might have altered the result, had the ALJ developed the record fairly and fully).

3

### III.  ESTABLISHING DISABILITY

A plaintiff is not entitled to benefits under Titles II and XVI unless he is "disabled" as defined by the Act.  42 U.S.C. § 423 (d)(1)(A);  *Heckler v. Campbell*, 461 U.S. 458, 459–61 (1983).  The law and regulations governing benefits under both Titles are the same. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A sequential five-step approach is used to determine whether the claimant qualifies as disabled.  *See* 20 C.F.R. § 404.1520(a)(4).  The claimant bears the burden of proving the first four steps to show that:   (1) he is not presently engaged in substantial gainful activity; (2) he has a severe impairment; (3) the medically-determinable impairment or combination of impairments is either listed or equivalent to an impairment listed in the appendix to the regulations; and, (4) if the impairment is not equivalent to one listed in the regulations, the impairment still prevents him from performing past relevant work.  *Leggett*, 67 F.3d at 564 n.2. Once the claimant proves the first four steps, the burden shifts to the Commissioner to establish that the claimant can perform substantial gainful employment available in the national economy. *Greenspan*, 38 F.3d at 236–37.  The burden then shifts back to the claimant to rebut this finding.  *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).  A determination at any step that the claimant is or is not disabled within the meaning of the Act ends the inquiry.  *Leggett*, 67 F.3d at 564.

In this case, the ALJ made the following findings: (1) Plaintiff has not engaged in substantial gainful activity since the alleged onset (R. 22); (2) Plaintiff's depression, Diabetes

Mellitus, GBS with bilateral knee weakness, anthralgia of the left knee, hypertension, and polyneuropathy are severe impairments, while Plaintiff's blurred vision, inability to control the bladder and bowel movements, syncope, hematochezia, and abdominal pain do not constitute severe impairments (R. 22–24);   (3) the medically determinable severe impairments do not meet or medically equal one of the impairments listed in the appendix to the regulations (R. 25);   (4) she retains the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally and 10 pounds frequently;   sit for 6 hours in an 8-hour workday and stand and/or walk for 2 hours each in an 8-hour workday;   push/pull and do gross/fine manipulation without limitation, except for only occasional pushing with the lower extremities, bilaterally; occasionally climb stairs, bend, stoop, crouch, crawl, balance and twist; have occasional exposure to heights and uneven surfaces; is unable to squat, run or climb ladders, ropes or scaffolds; and, is able to get along with others, understand detailed instructions, concentrate and perform detailed tasks, and respond and adapt to workplace changes in supervision (R. 27); Plaintiff is unable to perform any past relevant work (R. 30);   and, (5) relying on the testimony of a vocational expert, and considering Plaintiff's RFC, age, education, and work experience, the ALJ found that other jobs exist in significant numbers in the national economy that Plaintiff could perform (R. 30–31).   The ALJ then found that Plaintiff had not been under a disability from February 8, 2012, through the date of the decision. (R. 31.)

## IV.   APPLICABLE LAW & ANALYSIS

The undersigned does not summarize the entirety of the administrative proceedings and record.   Rather, the undersigned focuses on the issues contained in the parties' motions.

### A.   The Parties' Arguments

Plaintiff focuses on one error by the ALJ.   She argues that the regulations and "unambiguous" Agency policy require that a claimant's need for an ambulatory assistive device be

evaluated for "medical necessity" and accounted for in the RFC finding.   (Dkt. Entry No. 7 at 3;

6.)   According to Plaintiff, the record is replete with evidence that "more than fairly raises the

issue that [Plaintiff] has required the use of a wheelchair, walker and/or cane since the onset of her

Guillain-Barre syndrome."   (*Id.* at 3.)   Plaintiff contends that the ALJ failed to make a finding

about whether Plaintiff's use of an assistive device is "medically necessary," which, in turn,

resulted in a RFC determination that failed to include any limitations on this issue.   (*Id.* at 3–4.)

Plaintiff argues that the ALJ's errors "are not harmless because the need for assistive devices

effectively limits Plaintiff to 'sedentary work,'" and a sedentary work designation means that the

"Agency's Medical-Vocational Guidelines [would] direct a finding that Plaintiff is disabled as a

matter of law."   (*Id.* at 4.)

According to Plaintiff's briefing, "[t]here can be no reasonable dispute that Ms. Garcia's

primary impairment is Guillain-Barre syndrome; as such, an understanding of that condition is

essential."   (*Id.* at 4.)   Plaintiff includes an excerpt from the Mayo Clinic website, which explains

Guillain-Barre syndrome as:

> a rare disorder in which your body's immune system attacks your nerves. Weakness
> and tingling in your extremities are usually the first symptoms.
>
> These sensations can quickly spread, eventually paralyzing your whole body. In its
> most severe form Guillain-Barre syndrome is a medical emergency. Most people
> with the condition must be hospitalized to receive treatment.
>
> The exact cause of Guillain-Barre syndrome is unknown. But it is often preceded
> by an infectious illness such as a respiratory infection or the stomach flu.
>
> There's no known cure for Guillain-Barre syndrome, but several treatments can
> ease symptoms and reduce the duration of the illness. Most people recover from
> Guillain-Barre syndrome, though some may experience lingering effects from it,
> such as weakness, numbness or fatigue.

(Dkt. Entry No. 7 at 4–5.)   The undersigned shall accept for general informational purposes only Plaintiff's description of the disease per the Mayo-Clinic excerpt.   Defendant does not challenge Plaintiff's general description of the disease from the Mayo Clinic's website.

Defendant filed its summary judgment motion before Plaintiff filed hers.   Defendant argues generally that the final decision and the ALJ's findings are supported by substantial evidence and were not the result of harmful legal error.   (*See* Dkt. Entry No. 5.)   Defendant addresses the issues related to Plaintiff's arguments insofar as Defendant argues that the RFC is supported by substantial evidence and the ALJ's findings about Plaintiff's subjective complaints and symptoms were proper and are well-supported, and Defendant references expressly the walker.   (*Id.* at 5–9.)

### B.   Relevant Law

If the sequential analysis proceeds past Step 3, the claimant's RFC is assessed.   *See* 20 C.F.R. § 404.1520(a);   *Perez v. Barnhart*, 415 F.3d 457, 462 (5th Cir. 2005) ("The claimant's RFC is used at both steps four and five of the sequential analysis: at the fourth step to determine if the claimant can still do his past relevant work, and at the fifth step to determine whether the claimant can adjust to any other type of work.").   The RFC is an individual's ability to perform activities despite the limitations imposed by an impairment.   *Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990).   The ALJ must determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations.   *See* 20 C.F.R. § 404.1545 (discussing the range of evidence that is evaluated when determining the RFC); *Elzy v. R.R. Ret. Bd.*, 782 F.2d 1223, 1225 (5th Cir. 1986) (similar).   Social Security Ruling ("SSR") 96-8p states that the RFC is an

assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. 1996 WL 374184, at *1 (S.S.A. 1996). A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule. *Id.* at *2. This inquiry requires the ALJ to determine whether, on a function-by-function basis, the claimant can perform all the strength demands of the particular category of work. *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (citing SSR 96-8p,1996 WL 374184, at *2).

Under precedential case law, an ALJ has a duty "to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). "If the ALJ does not satisfy his duty, his decision is not substantially justified." *Id.* Reversal is only appropriate if the plaintiff shows prejudice from the ALJ's failure to develop the record. *Id.* "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Id.* at 557 n.22.

## C.    Discussion

The undersigned concludes that Plaintiff's arguments lack merit. The record supports the conclusion that the ALJ did not err as alleged and that, even if the ALJ did err, it was harmless or non-prejudicial. The undersigned also concludes that the ALJ's RFC determination and related findings are supported by substantial evidence.

Plaintiff complains that the ALJ did not properly evaluate Plaintiff's need for a cane, walker, or wheelchair under Agency rules or policy.[1]    (Dkt. Entry No. 7 at 6–7.) According to

---

[1]    Plaintiff relies in large part on SSR 96-9p, 1996 WL 374185, at *7, which concerns hand-held assistive devices, not wheel chairs, and states the following:

Plaintiff, the Agency rules and the ALJ's duty to develop the record required the ALJ to determine whether there was a medical necessity for an ambulatory assistive device and to incorporate any findings into the RFC.   Plaintiff contends that there were enough instances in the record of her using some type of assistive device that it triggered the ALJ's duty to explore the issue further and consider whether a device was necessary.   Plaintiff argues that this same evidence shows that Plaintiff has used and requires an assistive device since the onset of her GBS.   Plaintiff argues the error was not harmless because, had Plaintiff been found to have an RFC limited to sedentary work, she would have been found disabled under the Medical-Vocation Guidelines (due in part to Plaintiff's advancing age).

Before proceeding, the undersigned takes a moment to summarize the ALJ's written decision and the hearing transcript as it pertains to the issues of Plaintiff's alleged need for an assistive device to ambulate and her alleged physical limitations.   In his discussion of the evidence, the ALJ noted that the hospital records from February 2012 (when the GBS was first detected or diagnosed) showed that Plaintiff was found to have some lower extremity weakness, probably related to GBS, but the ALJ also noted that MRIs of her cervical, thoracic, and lumbar spines, which were conducted during the same hospitalization, showed normal findings.   (R. 23.) The ALJ dedicated an entire paragraph in the written decision to explaining the legal and

---

**Medically required hand-held assistive device:** To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (*i.e.*, whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

evidentiary basis for his drawing an adverse inference from the fact that Plaintiff has rarely sought out medical treatment since the onset of the GBS and from the overall lack of medical or treatment evidence—past or present—to support Plaintiff's allegations, such as the immobility caused by the GBS and feeling paralyzed due to the GBS.  (R. 27.)  The ALJ found that the lack of prescribed treatments in general undermines her claimed limitations.  (*See* R. 27–28.)  The ALJ did not credit Plaintiff's excuses for her failure to obtain treatment, such as her being unable to afford it, because the evidence showed that she had not attempted to obtain medical services through some other route, and, at the same time, the evidence showed that she had accessed medical care at the Nuestra Clinic Del Valle ("Nuestra Clinic"), which offers discounted medical care.  (R. 29.)

The ALJ noted the absence of any physical therapy.  (R. 28.)  The ALJ gave great weight to the progress notes from Nuestra Clinic ("treating physicians"), which the ALJ found did not include any objective findings of disabling symptoms and physical limitations.  (R. 28.)  The ALJ also cited the notes from Dr. Calvo, the consultative examiner, and the ALJ observed that his report showed, among other things, no evidence of atrophy, particularly in the lower extremities, no fasciculations of any muscle of the lower extremities, and no physical examination results of her upper and lower body that were consistent with the degree of her alleged limitations.  (R. 29.) The ALJ also noted that Dr. Calvo's report indicated that Plaintiff was very vague in describing her symptomology (R. 24), and his report reflected that Plaintiff was able to walk and stand on her own (R. 24; 29).[2]  The ALJ noted that Dr. Calvo's findings are inconsistent with a pattern of

---

[2]  Plaintiff disputes this statement in Dr. Calvo's report.  The undersigned observes that ALJ heard, by way of Plaintiff's testimony at the hearing, her version of what occurred at the appointment, as far as her ability to get up from the wheel chair and ambulate.  This dispute is not a viable basis for a remand, as it is mere disagreement with the ALJ's fact-finding, and, in any event, there is ample record evidence besides this one note in Dr. Calvo's report to support the

regular wheelchair use.   (R. 24.)   The ALJ properly gave less weight to the opinion of a treating physician, Dr. Diaz, who opined on one occasion in the past that Plaintiff should be considered for disability benefits due to the GBS.   In doing so, the ALJ made the following express findings in deciding to give the opinion less weight:   (1) their treatment relationship was too brief at that point in time; (2) Dr. Diaz's opinion was not well supported; and, (3) his opinion was inconsistent with more recent evidence showing that her condition has improved.   (R. 29–30.)

The ALJ acknowledged that certain treatment records included notes showing that (1) Plaintiff was using a cane when she appeared for a follow-up appointment (post hospitalization) at the Nuestra Clinic in February 2012 (R. 23) and (2) she was using a wheel chair when she went to two subsequent appointments—the CE appointment in June 2012 and another at the Nuestra Clinic in August 2012 (R. 24).   The ALJ noted that, although Plaintiff claims she needs a walker to ambulate, one has never been prescribed.   (R. 28.)   After an extensive discussion of the evidence and Plaintiff's alleged symptoms and limitations, which was based in large part on Plaintiff's hearing testimony, the ALJ found that Plaintiff's subjective complaints and statements about the "intensity, persistence, and limited effects of these symptoms" were not entirely credible.   (R. 26.) The ALJ stated that his RFC determination accounts for some limitations resulting from Plaintiff's bilateral knee problems and GBS. (R. 28.)

The hearing transcript reflects that the ALJ asked Plaintiff a number of questions about the wheel chair and walker, and Plaintiff's attorney examined her about these devices at length during the hearing.   (R. 53–54: 58–61.)   At the hearing, Plaintiff told her attorney that, while her neurologist, Dr. Diaz, had seen her using a wheel chair and a walker, he never told her that using

ALJ's findings.

either was unnecessary or that she did not need one; however, she could not remember if Dr. Diaz ever told her she needed a wheel chair. (R. 60–61.) Upon examination by counsel, Plaintiff testified that she did not have physical therapy after she was discharged from the hospital in 2012 (at which time she was diagnosed with lower extremity weakness, probably related to GBS) and, after her release, she acknowledged that she had "progressed" from being unable to walk to being able to walk, even without physical therapy. (R. 61.) Upon examination by counsel, she testified that she had not been able to progress beyond walking with the walker, but she also acknowledged that she did not have any other studies to evaluate the strength in her legs and her abdominal pain, even though she had complained about her symptoms to providers at the Nuestra Clinic. (*Id.*) When questioned by the ALJ, Plaintiff testified that she purchased the walker herself and that no one had prescribed it for her. (R. 53–54.) Plaintiff told the ALJ that she does not go to the doctor as often as she should. (R. 47.) When asked how much weight she could lift, Plaintiff responded that her arms are very weak and that she "can't lift." (R. 54.) When the ALJ pointed out that Plaintiff's purse looked like it weighed at least five pounds, Plaintiff admitted she is able to lift it. (*Id.*)

Even assuming arguendo that Agency policies or the regulations *require* an ALJ to make express finds related to the "medical necessity" of assistive devices, and acknowledging that an ALJ has a duty to develop the record fairly and adequately, the undersigned concludes that the ALJ did not err reversibly. The undersigned begins with Plaintiff characterization of the record as being full of a multitude of references about an assistive device, including a cane, walker, and wheel chair. The undersigned observes that these references do not have the significance that Plaintiff argues they do, nor are they entitled to any extra special consideration or weight under the case law and regulations for the purposes of determining whether the ALJ erred reversibly.

The references Plaintiff points to amount to observational notes in treatment records from the CE and Nuestra Clinic, which describe the patient (Plaintiff) as presenting herself in a wheel chair or with a cane and, in one instance, self-reporting to the CE that she needs a walker to ambulate.  (Dkt. Entry No. 7 at 5–6.)   As the fact-finder and in light of the evidence as whole (as discussed later), the ALJ was not compelled by law to give these various references in the record the amount of weight or significance Plaintiff thinks he should have.  *See, e.g., Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (indicating that an ALJ is responsible for weighing the claimant's credibility and the medical evidence); *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990) (reiterating that the "ALJ has sole responsibility for determining a claimant's disability status").   An observational note about what assistive device Plaintiff showed up to an appointment with and notations about the Plaintiff's complaints to the provider are *not* the equivalent of a medical determination or opinion that Plaintiff requires or would benefit from a walker or wheel chair.  *See, e.g.*, 20 C.F.R. § 404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.");  20 C.F.R. § 404.1513(b)(1)–(6) (explaining what information medical reports should include).  Even under the rules concerning treating physicians, the ALJ in this case was free to give little or no weight to the observational notes describing how Plaintiff presented herself to her treating doctors (and her statement to the CE about how she needs a walker to ambulate) under every recognized ground for "good cause."  *E.g., Greenspan*, 38 F.3d at 237 (explaining that "ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining

13

disability" but also explaining that *an ALJ has good cause to give little to no weight such evidence when the* <u>*statements*</u> *by the physician "are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence"*) (emphasis added).

To the extent Plaintiff argues that the ALJ failed to develop the record in relation to the assistive device, that argument is unpersuasive.   First, the record reflects that Plaintiff was referred for a consultative examination for the purposes of her case, which means that the ALJ *did* take action to develop the record.   Just because the consultative examination did not result in any direct, express statement (favorable or not) about the medical necessity of an ambulation device does not mean the ALJ failed to develop the record.   In addition, the hearing transcript reflects that the ALJ fairly developed this matter at the hearing, as evidenced by Plaintiff's examination by the ALJ and counsel.   *Cf. Sun v. Colvin*, 793 F.3d 502, 509 (5th Cir. 2015) (explaining that, "in order to determine whether the ALJ gathered the information necessary to make a disability determination," the reviewing court "often focuses on the ALJ's questioning of the claimant"). The undersigned finds that the ALJ did not err by denying Plaintiff's claim for benefits on the evidence before him and by not developing the record more than he did—based only on the "fact" of Plaintiff's history of GBS and treatment records reflecting that Plaintiff showed up to her appointments in a wheel chair or with a cane/walker and told the CE she needs a walker to ambulate, and this is particularly true when the record reflects that Plaintiff left those very same appointments without any type of recommendation or order for an assistive device and in light of the conspicuous absence of any medical opinion or evidence that would support Plaintiff's claimed need for such a device.   *See, e.g, Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) ("Because the

record contained ample objective and opinion evidence supporting the ALJ's conclusions, however, he was not required to develop the record further . . . ."); *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991) (explaining that the claimant has the burden of proving disability by establishing a physical or mental impairment and that, if the claimant is unable to provide sufficient medical evidence, the ALJ may make a decision based on the information available, as a general rule);  20 C.F.R. § 404.1520b (explaining that evidence, such as medical evidence, is "inconsistent" when it "is ambiguous" or "when the medical evidence does not appear to be based on medically acceptable clinical or laboratory diagnostic techniques" and explaining that "*[i]f any of the evidence in your case record is inconsistent, we will weigh the relevant evidence and see whether we can determine whether you are disabled based on the evidence we have*") (emphasis added).   The ALJ properly concluded, based on the record before him, that there was an absence of objective evidence and treatment to support Plaintiff's subjective complaints and alleged limitations, which included her claims of impaired mobility, physical weakness, and a need for a walker to ambulate.   (R. 27–30)   *See, e.g.*, *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (reiterating that subjective complaints must be corroborated by objective medical evidence); *Villa*, 895 F.2d at 1024 (stating that, as a general rule, the ALJ is not precluded from relying upon the lack of treatment as an indication of non-disability).   Moreover, it is apparent the ALJ looked at the very things Plaintiff argues were not evaluated—and did so in an individualized manner—when he evaluated the medical evidence and assessed the credibility of Plaintiff's alleged limitations.   *Cf.* SSR 96-9p, 1996 WL 374185, at *7 ("To find that a hand-held assistive device is medically required, *there must be medical documentation establishing the need for a hand-held assistive device . . .* and describing the circumstances for which it is needed and also explaining

that the "adjudicator *must always consider the particular facts of a case*") (emphasis added).   The undersigned observes that, because there was an absence of any *direct* medical evidence demonstrating a medical necessity, such as opinion evidence, a prescription, or records from treating or examining sources recommending one or otherwise establishing a clear need for one, the issue, through no fault of the ALJ, became inextricably entwined with the evaluation of Plaintiff's alleged limitations and symptoms and her credibility, which the ALJ evaluated and documented in a very thorough manner.

The ALJ wrote a very lengthy decision, which included an exhaustive discussion of the evidence and Plaintiff's alleged limitations and symptomology. The written decision adequately reflects the ALJ's findings and reasoning.  In light of this record, Plaintiff is unable to obtain a remand on the basis that the ALJ failed to articulate his findings on certain matters in a more detailed, exact manner (*e.g.*, by not using magic words like "medical necessity" or failing to tell the reader in no uncertain terms "here is why I am not incorporating any assistive-device limitations into the RFC"). *Cf. Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (explaining that bare conclusions are sometimes beyond meaningful judicial review but also acknowledging that an ALJ is not required to do an exhaustive point-by-point discussion of the evidence); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected.").

In discussing the evidence, the ALJ noted that no walker had ever been prescribed.   (R. 28.)  Plaintiff argues that no prescription is required for a walker, citing to non-binding precedent from the Seventh Circuit, *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("Absurdly, the administrative law judge thought it suspicious that the plaintiff uses a cane, when no physician had

prescribed a cane. A cane does not require a prescription; it had been suggested to the plaintiff by an occupational therapist.").[3]   Plaintiff also contends that, because she took it upon herself to borrow the walker (and a wheel chair) after her discharge from the hospital, it should have tipped the ALJ off that she actually required such a device, and it corroborated her claim that she is unable to pay for medical care as a general matter.   Although Plaintiff argues that one does not need a prescription for a walker, a fair reading of the ALJ's written decision shows that he considered the lack of a prescription to be *relevant*, not dispositive.[4]   In other words, there is no indication that the ALJ dismissed Plaintiff's alleged need for an assistive device for ambulation based *solely* on the absence of a prescription.   Rather, as already explained, the record shows that the ALJ considered a range of medical, testimonial, and record evidence when evaluating Plaintiff's physical limitations, subjective complaints, and credibility and determining the RFC.

The undersigned is unpersuaded by Plaintiff's arguments that the ALJ erred in discounting her testimony that she could not obtain treatment due to economic reasons and because she has to travel too far to obtain free or discounted medical services, such as at Nuestra Clinic.   The ALJ was not required to side with Plaintiff on this dispute, and the ALJ made appropriate, allowable findings under the proper legal standards (which included citation to the relevant case law) by concluding that (1) Plaintiff's subjective complaints were not entirely credible and her reasons for

---

[3]   The undersigned notes that, unlike the facts in the Seventh Circuit case, Plaintiff has *no* recommendation from *any* healthcare professional or provider indicating that Plaintiff requires or would benefit from an ambulatory assistive device.

[4]   This information—that is, whether or not a physician has prescribed a walker, cane, or wheel chair—is relevant to the issue of medical necessity, to an ALJ's inquiry into the severity or degree of the claimant's limitations, and to the credibility of the claimant.   Plaintiff does not persuasively demonstrate that an ALJ is prohibited from considering the presence or absence of a prescription when evaluating an alleged need for durable medical equipment.

not seeking treatment were inconsistent with the record; (2) Plaintiff's allegations about the extreme limitations caused by her impairments were not supported by the objective medical evidence and inconsistent with her lack of treatment, and (3) Plaintiff had not gone to sufficient lengths to treat or tend to her allegedly disabling impairments (even if she is financially strapped). (R. 27–30.) *See Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987) (explaining that, if "the claimant cannot afford the prescribed treatment or medicine, and *can find no way to obtain it*, the condition that is disabling in fact continues to be disabling in law") (emphasis added); *see also Harper v. Sullivan*, 887 F.2d 92, 97 (5th Cir. 1989) (finding that *Lovelace* did not apply, in part, because *no physician had pronounced the claimant disabled* and "*his subjective symptomatology has been found incredible*" and also emphasizing that the *Lovelace* "rule does not encompass claims of persons who can prove no disability but only seek benefits as a means of affording care that might conceivabl[y] prevent a disability") (emphasis added).

The undersigned finds that, based on the evidence already discussed, the credibility finding and adverse findings touching on Plaintiff's alleged limitations are supported by substantial evidence. In addition, the RFC determination by substantial evidence, which includes the adverse credibility finding, the adverse finding that Plaintiff's symptoms and limitations are not as extreme as she alleged, the absence of treatment for her allegedly disabling impairments, the non-examining, agency physicians' written RFC determination, which the ALJ gave "some weight" (R. 29), the lack of objective medical evidence to support her claim, the treatment records, such as Dr. Calvo's report, which show that Plaintiff can do more than she alleges, and Plaintiff's hearing testimony. This same evidence, in addition to the state agency physicians' opinions in general and as far as the Listings-determination at Step 3 and the testimony of the vocational expert, substantially support the final decision.

18

In sum, the ALJ did not "fail" to consider the issue of the assistive device, nor did the ALJ err in the process of considering Plaintiff's ambulatory limitations, weighing the medical evidence, and evaluating Plaintiff's subjective complaints and credibility.   Plaintiff fails to explain why the ALJ's evidentiary inferences and conclusion that Plaintiff's mobility and ambulation are not as limited she claimed are erroneous.   Plaintiff's arguments go to the heart of factual and evidentiary matters that were already reviewed and resolved by the ALJ, and Plaintiff cannot obtain a reversal or remand merely because she disagrees with the ALJ's findings and disposition of the evidence. *See Brown*, 192 F.3d at 496 (explaining that evidentiary conflicts are for the Commissioner, not the courts).

In addition, Plaintiff fails to show prejudice, even assuming *arguendo* that the ALJ erred in some manner, such as by failing to make findings that "are consistent with" agency rules or by failing to develop the record fully and fairly.   Plaintiff argues that she could have been found to have an RFC for sedentary work, which could have resulted in a finding of disability, if the ALJ found there was a medical necessity for a hand-held assistive device.   That is far too speculative to warrant a remand.   *Cf. Jones*, 691 F.3d at 735 (indicating that mere allegations of harm resulting from legal errors are insufficient to demonstrate that a remand is warranted).   Plaintiff also points to the treatment records in which it was noted that Plaintiff showed up at her appointments with an assistive device and told the CE she needs a walker.   However, those notes in the treatment records are equivocal at best and not as supportive as she represents on judicial review.   The GBS diagnosis itself and observational notes in the treatment records do not justify a remand, especially when Plaintiff left those very same appointments without any type of recommendation for an assistive device and given the absence of any other medical opinions or evidence indicating a medical need for such a device.   The record reflects that the ALJ had the same medical records

before him that Plaintiff refers to now on judicial review, and there is no indication that the ALJ failed to consider them;   indeed, Plaintiff's own briefing shows that the ALJ referenced these observational notes in the treatment records in his written decision.   (*See* Dkt. Entry No. 7 at 5–6) (citing to R. 23–24.) Plaintiff fails to demonstrate persuasively, via argument or evidence, that additional evidence could or would have been produced if the ALJ had fully developed the record on the issue of the assistive device or that the additional evidence might have led to a different decision.   *See, e.g., Ripley,* 67 F.3d at 557 n.22 (explaining the standard for prejudice when the issue is the ALJ's failure to develop the record).   Plaintiff has offered no evidence to suggest that additional records from her physicians would have had an effect on the judgment or that they even exist.   *See Jones,* 691 F.3d at 735 (utilizing this standard of prejudice and asserting that "[a] mere allegation that additional beneficial evidence might have been gathered had the error not occurred is insufficient to meet this burden"). It is not enough in this case for Plaintiff to fall back on existing evidence that the ALJ already considered and weighed, such as the treatment notes and Plaintiff's complaints about the degree of her physical limitations.   The undersigned observes that Plaintiff's need for the three different assistive devices she has used (a walker, cane, and wheel chair) has always been and still is predicated on Plaintiff's personal allegations about the severity of her physical limitations, which the ALJ did not find fully credible, and these circumstances tend to undermine, rather than support, any claim that additional evidence would or could be deduced that might actually change the outcome.   Lastly, the ALJ's failure to evaluate the assistive device under SSR 96-9p, the regulations, or under a "medical necessity" standard does not cast into doubt the existence of substantial evidence.   *See Ripley,* 67 F.3d at 557 (explaining that if "the ALJ does not satisfy his duty [to develop the record], his decision is not substantially justified"); *Morris,* 864 F.2d at 335 ("[P]rocedural improprieties . . . will therefore constitute a basis for remand only if

such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision.").

In conclusion, the undersigned finds that the ALJ did not err reversibly.   The notes in the treatment records that reflect Plaintiff's use of an assistive device when she showed up for her appointments were not entitled to any significant weight.   In light of all the evidence before the ALJ, including the *lack* of treatment and objective evidence in support, these notes did not trigger the ALJ's duty to develop the matter further, and he properly made a ruling on the evidence before him.   Although the ALJ did not make an express "medical necessity" finding, the record clearly reflects that the ALJ considered all the medical and record evidence and Plaintiff's testimony with respect to her alleged limitations.   The ALJ expressly mentioned the walker, and his findings and reasoning on these matters are quite clear in the written decision.   In light of the ALJ's reasoning and adverse findings, there was no reason for the ALJ to include in the RFC any limitations caused by an assistive device.   There is substantial evidence supporting the RFC determination, the findings the ALJ made along the way to that determination, and the final decision.   Even if the ALJ erred, Plaintiff was not prejudiced because Plaintiff's theory of prejudice (*i.e,* if the ALJ ultimately agrees that Plaintiff requires an assistive device, that, in turn, could direct a finding of disability under Medical-Vocational Guidelines) is too speculative.   In addition, the evidence she points to in support of her allegation that she requires an assistive device, such as the treatment notes, is equivocal, and, for the reasons stated earlier in this Report, Plaintiff fails to demonstrate prejudice or harm to justify a remand.

# V.   CONCLUSION

### *Recommended Disposition*

Based on a review of the pleadings, record, and relevant law, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment (Dkt. Entry No. 6) be **DENIED**, Defendant's Motion for Summary Judgment (Dkt. Entry No. 5) be **GRANTED** to the extent it is consistent with the findings and conclusions in this Report, the Commissioner's final decision to deny benefits be **AFFIRMED**, and the case be closed.

### *Notice to the Parties*

Within 14 days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations.   A party may respond to another party's objections within 14 days after being served with a copy thereof.   The district judge to whom this case is assigned shall make a *de novo* determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made.   The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the District Court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of plain error or manifest injustice.

The clerk of this Court shall forward a copy of this document to the parties by any receipted means.

**DONE** at McAllen, Texas, this 11th day of January, 2016.

_Dorina Ramos_
Dorina Ramos
UNITED STATES MAGISTRATE JUDGE